# 15 MAG . 3966

**ORIGINAL**

Approved: _____
DINA MCLEOD
Assistant United States Attorney

Before:    THE HONORABLE GABRIEL W. GORENSTEIN
           United States Magistrate Judge
           Southern District of New York

U.S. DISTRICT COURT
FILED

NOV 0 4 2015

D.S.
S.D. OF N.Y.

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

        - v. -

RAMON VARGAS-RODRIGUEZ,

                Defendant.

- - - - - - - - - - - - - - - - - -x

SEALED
COMPLAINT

Violation of
18 U.S.C. § 922(g)(1)

COUNTY OF OFFENSE:
BRONX

DOC #                /

SOUTHERN DISTRICT OF NEW YORK, ss.:

        CHRISTOPHER ZAPATA, being duly sworn, deposes and says
that he is a Detective with the New York City Police Department
("NYPD"), and charges as follows:

### COUNT ONE

        1.    On or about September 22, 2015, in the Southern
District of New York and elsewhere, RAMON VARGAS-RODRIGUEZ, the
defendant, after having been convicted in a court of a crime
punishable by imprisonment for a term exceeding one year,
knowingly did possess, in and affecting commerce, a firearm, to
wit, a Kel-Tec, Model PF-9, 9mm pistol, which previously had
been shipped and transported in interstate and foreign commerce.

        (Title 18, United States Code, Section 922(g)(1).)

        The bases for my knowledge and for the foregoing
charges are, in part, as follows:

        2.    I am a Detective assigned to the Firearms
Enhancement Unit of the NYPD and I have been personally involved
in the investigation of this matter.  This affidavit is based
upon my personal participation in the investigation of this
matter, my conversations with law enforcement agents, witnesses
and others, as well as my examination of reports, records, and

video footage.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

        3.     Based on my conversations with two NYPD officers ("Officer-1" and "Officer-2," respectively; the "Officers," collectively) who have participated in this investigation, I have learned, among other things, the following:

        a.     On or about September 22, 2015, at approximately 9:00 p.m., the Officers were conducting traffic speed enforcement with a LiDAR speed gun in the vicinity of Webster Avenue in the Bronx (the "LiDAR Enforcement Area").[1]

        b.     The posted speed limit in the LiDAR Enforcement Area is 25 m.p.h.

        c.     The Officers observed a white vehicle (the "Vehicle") in the northbound traffic on Webster Avenue.  The Officers—who have been trained in visually estimating the speed of vehicles—visually estimated that the Vehicle was travelling above the speed limit.

        d.     Officer-1 pointed the LiDAR speed gun at the Vehicle to determine the Vehicle's speed and obtained a LiDAR reading of 37 m.p.h.

        e.     The Officers returned to their marked police vehicles, turned on the lights and sirens of their police vehicles, and began pursuing the Vehicle.

        f.     The Vehicle pulled over in the vicinity of the 52nd Precinct Station House.

        g.     Officer-1 approached the driver side of the Vehicle and Officer-2 approached the passenger side of the Vehicle.  As the Officers approached the Vehicle, both Officers smelled the strong odor of marijuana emanating from the Vehicle.

---

[1] LiDAR speed guns use a remote sensing technology that measures distance by illuminating a target with a laser and analyzing the reflected light.  Unlike radar speed guns, LiDAR speed guns can measure the speed of an individual vehicle within a stream of traffic.

h.    Officer-1 introduced himself to the driver of the vehicle, later identified as RAMON VARGAS-RODRIGUEZ, the defendant, and asked for VARGAS-RODRIGUEZ's driver's license and vehicle registration.  Officer-1 informed VARGAS-RODRIGUEZ that he had been pulled over for speeding.

i.    VARGAS-RODRIGUEZ was alone in the Vehicle.

j.    Officer-1 asked VARGAS-RODRIGUEZ whether he had smoked marijuana in the Vehicle earlier that day. VARGAS-RODRIGUEZ stated in, sum and substance, that he had not smoked marijuana in the Vehicle, but that one of his family members had smoked marijuana in the Vehicle.

k.    Officer-1 observed that there was an open black plastic bag on the front passenger seat of the Vehicle. Officer-2, who was standing on the passenger side of the Vehicle and was using a flashlight to look inside the Vehicle, observed a black plastic bag on the front passenger seat with a square-shaped plastic sandwich bag inside.

l.    Officer-1 asked VARGAS-RODRIGUEZ to step out of the Vehicle.  Officer-2 stood with VARGAS-RODRIGUEZ outside of the Vehicle while Officer-1 proceeded to the passenger side of the Vehicle.  Officer-1 opened the front passenger door of the Vehicle.  From outside the Vehicle, Officer-1 could see a plastic sandwich bag containing a leafy green substance within the open black plastic bag on the front passenger seat.  Based on Officer-1's training and experience, Officer-1 believed that the plastic sandwich bag contained marijuana.[2]

m.    Officer-1 told Officer-2 to place VARGAS-RODRIGUEZ under arrest and the Officers walked VARGAS-RODRIGUEZ into the 52nd Precinct Station House.

n.    The Officers took VARGAS-RODRIGUEZ into a holding cell area to search VARGAS-RODRIGUEZ.  Officer-1 removed the strings from VARGAS-RODRIGUEZ's hooded sweatshirt and sweatpants.  Both Officers heard a thud, as though an object had hit the floor.

o.    Officer-1 then patted down VARGAS-RODRIGUEZ's right pant leg and found a firearm ("Firearm-1")

---

[2] An NYPD Laboratory Report later confirmed that the plastic sandwich bag contained approximately 220 grams of marijuana.

loaded with six rounds of ammunition inside VARGAS-RODRIGUEZ's sweatpants, near his right ankle.

        p.    Officer-1 subsequently conducted an inventory search of the Vehicle and discovered 64 rounds of 9mm ammunition in a backpack in the Vehicle.

        4.    Based on my review of New York State Department of Motor Vehicle Records, I have learned that RAMON VARGAS-RODRIGUEZ, the defendant, is the registered owner of the Vehicle.

        5.    Based on my review of a NYPD Firearm Examination Report, I have learned that Firearm-1 is a Kel-Tec, Model PF-9, 9mm pistol revolver.

        6.    Based on my communications with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives who is familiar with the manufacturing of firearms, I know that Firearm-1 was not manufactured in New York state.

        7.    I have reviewed criminal history records pertaining to RAMON VARGAS-RODRIGUEZ, the defendant, which show that on or about October 20, 2006, in New York Supreme Court, Queens County, VARGAS-RODRIGUEZ was convicted of Attempted Criminal Possession of a Weapon in the Third Degree, a Class E Felony, in violation of New York Penal Law 265.02.

        WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of RAMON VARGAS-RODRIGUEZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

                    Detective Christopher Zapata
                    New York City Police Department

Sworn to before me this
4th day of November, 2015

THE HONORABLE GABRIEL W. GORENSTEIN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK